# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

MICHAEL BARNES; JACKLYN BEAGLE;
DIANA BENNETT; VERNON BENNETT II;
GREGG BROWER; JOHN CHURCH; KARI
SUE CRATON; RON LEE CRATON; JOHN
DEKKER; ELVA GARZA, individually, and as
Next Friend of Domineck Luz Drew Garza,
minor; MAXIMO GARZA; JENNIFER
GILBERT; LARRY GILBERT; TESSA
GILBERT; JACKIE GILES; MARY GILES;
MICHAEL HAMMER; CAROL HELLER-
CHURCH; JOAN JEROME; GUADALUPE
JIMENEZ; JAMES JOHNSON; RANDALL
KAMMERAAD, individually, and as Next
Friend of Jamiha Kammeraad, minor;
HOWARD KNIGHT; JACQUELINE KNIGHT;
LEONARD LAAKSONEN; BENNIE
LATHAM; RAÚL MARTINEZ; YOLANDA
MARTINEZ; SERETHA MERRITT; STEVEN
MURRAY; CHRISTOPHER NOLAN; STACY
NOLAN, individually, and as Next Friend of
Ryan Nolan and Zachary Nolan, minors; MARY
ORTIZ; ROBERT ORTIZ, JR.; ROBERT
ORTIZ; TONY ORTIZ; KATHRYN
RADLOFF, individually, and as Next Friend of
Rebekah Radloff, minor; RUSTY RADLOFF;
JOE RAMIREZ; ROSE RAMIREZ; MARY
REDDER; BARBARA RIES; JANET
RYBAK; JESSICA SALAZAR; JESUS
SALAZAR, JR.; JESUS SALAZAR; WENDY
SALAZAR; DARCY SAYLOR; HEATHER
LYNN SAYLOR; LARRY SAYLOR; BRIAN
SESSIONS, individually, and as Next Friend of
Elijah Lee Sessions, minor; LEE SESSIONS;
MARGARET SESSIONS; DANNY SHARP;
SCHELIA SHARP; MELANIE STREICHER,
individually, and as Next Friend of Cameron
Streicher, minor; ROYAL STREICHER;
TAMULA STREICHER, individually, and as
Next Friend of Jennifer Streicher, minor;

Case No. 1:10-cv-541

Hon. Paul L. Maloney, Chief Judge

MICHAEL TUCKER; MITCH VAN DYKE;
VICKI VAN DYKE; DEBRA WIELAND;
KENNETH WIELAND;

          Plaintiffs,

vs.

BIRDS EYE FOODS LLC, and
BIRDS EYE FOODS, INC.

          Defendants.

_____/


Bernard A. Weintraub
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, New York 10003
(212) 558-5500

William J. Stapleton (P38339)
Bruce T. Wallace (P24148)
Co-Counsel for Plaintiffs
HOOPER, HATHAWAY, P.C.
126 South Main Street
Ann Arbor, MI 48104
(734) 662-4426
_____/


### FIRST AMENDED COMPLAINT AND JURY DEMAND

NOW COME the Plaintiffs, Michael Barnes, Jacklyn Beagle, Diana Bennett, Vernon

Bennett II, Gregg Brower, John Church, Kari Sue Craton, Ron Lee Craton, John Dekker, Elva

Garza, individually, and as Next Friend of Domineck Luz Drew Garza, minor, Maximo Garza,

Jennifer Gilbert, Larry Gilbert, Tessa Gilbert, Jackie Giles, Mary Giles, Michael Hammer, Carol

Heller-Church, Joan Jerome, Guadalupe Jimenez, James Johnson, Randall Kammeraad,

individually, and as Next Friend of Jamiha Kammeraad, minor, Howard Knight, Jacqueline

Knight, Leonard Laaksonen, Bennie Latham, Raúl Martinez, Yolanda Martinez, Seretha Merritt,

Steven Murray, Christopher Nolan, Stacy Nolan, individually, and as Next Friend of Ryan Nolan and Zachary Nolan, minors, Mary Ortiz, individually, and as Next Friend of Luis Ortiz, minor, Robert Ortiz, Jr., Robert  Ortiz, Tony Ortiz, Kathryn Radloff,  individually, and as Next Friend of Rebekah Radloff, minor, Rusty Radloff, Joe Ramirez, Rose Ramirez, Mary Redder, Barbara Ries, Janet Rybak, Jessica Salazar, Jesus Salazar, Jr., Jesus Salazar, Wendy Salazar, Darcy Saylor, Heather Lynn Saylor, Larry Saylor, Brian Sessions, individually, and as Next Friend of Elijah Lee Sessions, minor, Lee Sessions, Margaret Sessions, Danny Sharp, Schelia Sharp, Melanie Streicher, individually, and as Next Friend of Cameron Streicher, minor, Royal Streicher, Tamula Streicher, individually, and as Next Friend of Jennifer Streicher, minor, Michael Tucker, Mitch Van Dyke, Vicki Van Dyke, Debra Wieland, Kenneth Wieland (collectively "Plaintiffs"), who by and through their attorneys, WEITZ & LUXENBERG, P.C. and HOOPER, HATHAWAY, P.C., and in support of their First Amended Complaint against defendant Birds Eye Foods, LLC ("BEF") and Birds Eye Foods, Inc., as successor in interest to Agrilink Foods, Inc., Curtice-Burns Foods, Inc., and Curtice-Burns, Inc. (and together with BEF, Michigan Fruit Canners, Comstock Michigan Fruit Canners and/or other affiliated predecessors operating at the Facility (as hereinafter defined), collectively "Birds Eye"), state as follows:

## I.     NATURE OF ACTION

1.     This action is brought to protect Plaintiffs, whose properties have been and continue to be contaminated and whose health has been and continues to be harmed by chemical pollutants including, but not limited to, manganese, iron and arsenic, that have entered the environment as a result of the activities of Birds Eye.  The migration of contaminants into the environment and onto Plaintiffs' properties was caused by Birds Eye's practice of spraying the fields surrounding its manufacturing facility located at 100 Sherman Street, Fennville, Michigan

## II.     JURISDICTION AND VENUE

2.     All Plaintiffs are residents of Fennville, within the County of Allegan, Michigan, except that Gregg Brower is currently a resident of Hamilton, Michigan, within the County of Allegan, Jennifer Gilbert is currently a resident of Lake Wales, Florida, and Jesus Salazar, Jr., is currently a resident of Evanston, Illinois.  Plaintiffs Gregg Brower, Jennifer Gilbert and Jesus Salazar, Jr. resided in Fennville, within the County of Allegan, Michigan, during all times material to this First Amended Complaint.

3.     Upon information and belief, BEF is a Delaware limited liability company with offices and a principal place of business located at 90 Linden Oaks, Rochester, New York.

4.     Upon information and belief, Birds Eye Foods, Inc., is a Delaware corporation with its principal place of business in the State of New York, and is the successor by name

5. Birds Eye owns and operates a food product manufacturing facility (otherwise known as the Birds Eye Facility or the Facility)—which currently includes four land application wastewater spray fields—located at 100 Sherman Road, Fennville, Michigan, in the county of Allegan, Michigan. Birds Eye is and has been for decades engaged in the transaction of business within the County of Allegan, Michigan.

6. All of the tortious activities alleged in this First Amended Complaint have occurred within the boundaries of Allegan County, Michigan, and, accordingly, virtually all of the damages caused by the actions and omissions of Birds Eye were incurred by Plaintiffs within the County of Allegan, Michigan.

7. Plaintiffs originally filed this matter in Allegan County Circuit Court, in which jurisdiction and venue were proper. On June 7, 2010, Birds Eye filed a Notice of Removal to remove the matter to this Court, asserting jurisdiction under 28 U.S.C. § 1332(a). On June 11, 2010, Birds Eye filed an Amended Notice of Removal. On June 11, 2010 this Court entered a Notice of Receipt of Case. Venue is proper in this Court under 28 U.S.C. § 1391(a)(2).

## III. SPECIFIC ALLEGATIONS RLATING TO PARTIES

8. Sampling data has established that harmful substances have leached into groundwater at the Birds Eye Facility and migrated to adjacent properties, including the properties of Plaintiffs.

9.      Plaintiffs Michael Barnes and Terry Barnes, husband and wife, have owned and resided at the property located at 2370 53rd Street, Fennville, Michigan, since July 1995. Plaintiff Michael Barnes suffers from dizziness and difficulty walking, developmental issues, and gastrointestinal problems.  Plaintiff Terry Barnes suffers from gastrointestinal problems, dizziness and difficulty walking.  While residing at 2370 53rd Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Plaintiffs Michael and Terry Barnes have had to replace clothing that became irreparably discolored or otherwise destroyed from the contamination after being washed in their water.   Upon information and belief, during the period that these Plaintiffs have owned and resided at 2370 53rd Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

10.      Plaintiff Jacklyn Beagle has rented and resided at the property located at 5299 124th Ave. #59, Fennville, Michigan, since August 2003.  Plaintiff Randall Kammeraad, who brings this claim for himself, individually, and on behalf of Jamiha Kammeraad, a minor, has rented and resided at the property since August 2003.  Plaintiff Jacklyn Beagle suffers from dizziness and difficulty walking, developmental issues, symptoms consistent with peripheral neuropathy, and nausea and vomiting.   Plaintiff Randall Kammeraad suffers from gastrointestinal problems and nausea and vomiting.   Jamiah Kammeraad suffers from gastrointestinal problems and nausea and vomiting.  While residing at 5299 124th Ave. #59, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have rented and resided at 5299

124th Ave. #59, that property was contaminated with pollution that emanated from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.   These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

11.     Plaintiffs Vernon Bennett II and Diana Bennett, husband and wife, have owned and resided at the property located at 2370 55th Street, Fennville, Michigan, since May 2007. While residing at 2370 55th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 2370 55th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs purchased the property with the intention of starting a small produce business there.  Plaintiffs cannot use the property to start a produce business because Birds Eye contaminated the groundwater.  Plaintiffs Vernon Bennett II and Diana Bennett have had to replace their hot water heater, water softener, toilet plumbing parts, kitchen sink plumbing, and bathroom sink plumbing that became irreparably discolored, corroded or otherwise destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

12.     Plaintiff Gregg Brower has owned the property located at 0 122nd Avenue since May 2001.  Upon information and belief, during the period that this Plaintiff owned 0 122nd Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as

13.     Plaintiffs John Church and Carol Heller-Church, husband and wife, have resided at the property located at 2378 53rd Street, Fennville, Michigan, since 1988.  Plaintiff Carol Heller-Church has owned and resided at the property since July 1978.  Plaintiff John Church has owned the property jointly with Plaintiff Carol Heller-Church since July 1995.  While residing at 2378 53rd Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 2378 53rd Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs John Church and Carol Heller-Church have had to replace their hot water heater, water softener, and plumbing throughout the house that became irreparably discolored, corroded or otherwise destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

14.     Plaintiffs Ron Lee Craton and Kari Sue Craton, husband and wife, have owned and resided at the property located at 5430 124th Avenue, Fennville, Michigan, since August 2005.  Plaintiff Ron Lee Craton suffers from dizziness and difficulty walking, gastrointestinal problems and nausea.  Plaintiff Kari Sue Craton suffers from dizziness and difficulty walking, gastrointestinal problems and nausea.  While residing at 5430 124th Avenue, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 5430 124th Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility. Plaintiffs

Ron Lee Craton and Kari Sue Craton have had to replace their shower, toilets, dishwasher, dishes, hot water heater, and water softener that became irreparably discolored, corroded or otherwise destroyed from the contamination. The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein. These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

15. Plaintiff John Dekker has owned and resided at the property located at 2731 54th Street, Fennville, Michigan, since October 2002. Plaintiff John Dekker has used this property as his primary place of residence as well as for his business, Jodek Distribution. Plaintiff Mary Redder has resided at the property located at 2731 54th Street since 2006. While residing at 2731 54th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water. Upon information and belief, during the period that these Plaintiffs owned, conducted business, and resided at 2731 54th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility. Plaintiff John Dekker is unable to use his boiler, water softener, and hot water heater, and he has had to replace internal parts of toilets that became irreparably discolored, corroded or otherwise destroyed from the contamination. The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein. These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter the property.

16. Plaintiffs Maximo Garza and Elva Garza, husband and wife, who bring this claim for themselves, individually, and on behalf of Domineck Luz Drew, a minor, have owned and resided at the property located at 2292 57th Street, Fennville, Michigan, since 1974. Plaintiff Elva Garza suffers from gastrointestinal problems and liver dysfunction. While residing at 2292

57th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water. Upon information and belief, during the period that these Plaintiffs have owned and resided at 2292 57th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs Maximo Garza and Elva Garza have had to replace their hot water heater, water softener, and metal hoses in the kitchen sink that became irreparably discolored, corroded or otherwise destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

17.     Plaintiffs Larry Gilbert and Tessa Gilbert have owned and resided at the property located at 2291 55th Street, Fennville, Michigan, since 1974.  Plaintiff Jennifer Gilbert is the daughter of Larry Gilbert and Tessa Gilbert, and resided at the property full-time from her birth in 1988 until 2002 and has returned many times each year since 2002.  Plaintiff Michael Tucker is the son of Larry Gilbert and Tessa Gilbert and has resided at the property full-time since his birth in 1990.  While residing at 2291 55th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 2291 55th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs Larry Gilbert and Tessa Gilbert have had to replace their shower, toilet, and hot water heater that became irreparably discolored, corroded or otherwise destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

18. Plaintiffs Jackie Giles and Mary Giles, husband and wife, have owned and resided at the property located at 5567 124th Avenue, Fennville, Michigan, since November 1980. While residing at 5567 124th Avenue, these Plaintiffs relied and continue to rely on a private well to supply drinking water. Upon information and belief, during the period that these Plaintiffs have owned and resided at 5567 124th Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility. Plaintiffs Jackie Giles and Mary Giles have had to replace their hot water heater that became irreparably discolored, corroded or otherwise destroyed from the contamination. The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein. These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

19. Plaintiff Michael Hammer has owned and resided at the property located at 2223 54th Street, Fennville, Michigan, since October 2005. While residing at 2223 54th Street, this Plaintiff relied and continues to rely on a private well to supply drinking water. Upon information and belief, during the period that this Plaintiff has owned and resided at 2223 54th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility. The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein. This Plaintiff has been and continues to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter his property.

20. Plaintiff Joan Jerome has owned and resided at the property located at 2272 53rd Street, Fennville, Michigan, since April 1992. While residing at 2272 53rd Street, this Plaintiff relied and continues to rely on a private well to supply drinking water. Upon information and belief, during the period that this Plaintiff has owned and resided at 2272 53rd Street, that

property was contaminated with pollution that emanated from the Birds Eye Facility.   The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.   This Plaintiff has been and continues to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter the property.

21.     Plaintiff Guadalupe Jimenez has owned and resided at the property located at 2246 South 54th Street, Fennville, Michigan, since 1970.   Plaintiff Guadalupe Jimenez suffers from gastrointestinal problems.   While residing at 2246 South 54th Street, this Plaintiff relied and continues to rely on a private well to supply drinking water.   Upon information and belief, during the period that this Plaintiff has owned and resided at 2246 South 54th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.   The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.   This Plaintiff has been and continues to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter the property.

22.     Plaintiff James Johnson has resided at the property located at 5552 124th Avenue, Fennville, Michigan, since 1946 and has owned the property since he inherited it from his parents in 2000.   Plaintiff James Johnson suffers from gastrointestinal problems.   While residing at 5552 124th Avenue, this Plaintiff relied and continues to rely on a private well to supply drinking water.   Upon information and belief, during the period that this Plaintiff has owned and resided at 5552 124th Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility.   Plaintiff James Johnson has had to replace his bathroom sink, stool, hot water heater, bathtub, and plumbing pipes in the basement that became irreparably discolored, corroded or otherwise destroyed from the contamination.   The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.   This Plaintiff has been and

continues to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter his property.

23.     Plaintiffs Howard Knight and Jacqueline Knight, husband and wife, have owned and resided at the property located at 5448 124th Avenue, Fennville, Michigan, since 1960. Plaintiff Jacqueline Knight suffers from dizziness, difficulty walking, nausea, vomiting, and kidney dysfunction.  While residing at 5448 124th Avenue, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 5448 124th Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs Howard Knight and Jacqueline Knight have had to replace their ice maker, toilet, sink, and water pipes that became irreparably discolored, corroded or otherwise destroyed from the contamination. The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

24.     Plaintiff Leonard Laaksonen has owned and resided at the property located at 5584 124th Avenue, Fennville, Michigan, since 2005.  Plaintiff Leonard Laaksonen suffers from dizziness, difficulty walking, gastrointestinal problems, nausea and vomiting.  While residing at 5584 124th Avenue, this Plaintiff relied and continues to rely on a private well to supply drinking water.  Upon information and belief, during the period that this Plaintiff has owned and resided at 5584 124th Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  This Plaintiff has been and continues to be exposed to and

injured by contaminated groundwater from Birds Eye that entered and continues to enter his property.

25.     Plaintiff Bennie Latham resided at the property located at 2211 54th Street, Fennville, Michigan, from 1974 until 2006.  Plaintiffs Bennie Latham and Seretha Merritt have owned the property located at 2211 54th Street, since 2006.  While Plaintiffs Bennie Latham and Seretha Merritt do not currently reside at the property located at 2211 54th Street, they go to the property every day and are exposed to the contaminated water as they use water from the well to water the garden that they maintain at the property and give water to their dogs which are kept in a kennel at the property.  Plaintiff Bennie Latham suffers from gastrointestinal problems.  While residing at and/or owning the property located at 2211 54th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 2211 54th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

26.     Plaintiffs Raúl Martinez and Yolanda Martinez, husband and wife, have owned the property located at 5570 124th Avenue, Fennville, Michigan, since 2003.  While owning 5570 124th Avenue, these Plaintiffs relied and continue to rely on a private well to supply water used for irrigation of farmland.  Plaintiffs Raúl Martinez and Yolanda Martinez plan to use the property as their primary residence in June of 2010 and to rely on the private well for drinking water and household needs.  Upon information and belief, during the period that these Plaintiffs have owned 5570 124th Avenue, that property was contaminated with pollution that emanated

from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

27.     Plaintiffs Christopher Nolan and Stacy Nolan, husband and wife, who bring this claim for themselves, individually, and on behalf of Ryan Nolan and Zachary Nolan, minors, have owned and resided at the property located at 5449 124th Avenue, Fennville, Michigan, since April 1991.  Ryan Nolan, a minor, is the son of Christopher Nolan and Stacy Nolan and has resided at the property since his birth in 1996.  Zachary Nolan, a minor, is the son of Christopher Nolan and Stacy Nolan and has resided at the property since his birth in 2000.  While residing at 5449 124th Avenue, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 5449 124th Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs Christopher Nolan and Stacy Nolan have had to replace their hot water heater, water softener, plumbing between pump and water softener, kitchen faucet, and bathroom faucet that became irreparably discolored, corroded or otherwise destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

28.     Plaintiffs Robert Ortiz and Mary Ortiz, husband and wife, who bring this claim for themselves, individually, and on behalf of Luis Ortiz, a minor, have owned and resided at the property located at 2380 54th Street, Fennville, Michigan, since 1999.  Luis Ortiz, a minor, is the son of Robert Ortiz and Mary Ortiz and has resided at the property since 1999.  Plaintiff Robert

Ortiz, Jr., is the son of Robert Ortiz and Mary Ortiz and resided at the property from 1999 until he went to college in 2005 and, since that time, he has visited the property periodically, staying for more than a total of three months during each year he visits.  Plaintiff Tony Ortiz is the son of Robert Ortiz and Mary Ortiz and resided at the property from 1999 until he went to college in 2006 and, since that time, he has visited the property periodically, staying for more than a total of three months during each year he visits.  While residing at 2380 54th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 2380 54th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

29.  Plaintiffs Rusty Radloff and Kathryn Radloff, husband and wife, who bring this claim for themselves, individually, and on behalf of Rebekah Radloff, a minor, have owned and resided at the property located at 2353 54th Street, Fennville, Michigan, since October 1993. Rebekah Radloff, a minor, is the daughter of Rusty Radloff and Kathryn Radloff and has resided at the property from the time of her birth in 1994.  While residing at 2353 54th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 2353 54th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs Rusty Radloff and Kathryn Radloff have had to replace their hot water heater, water softener, bathtub, kitchen faucets, shower head, bathroom faucets, water pump, pressure tank, and bathroom plumbing that became irreparably discolored, corroded or otherwise

16

destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

30.     Plaintiffs Joe Ramirez and Rose Ramirez, husband and wife, have owned and resided at the property located at 5556 124th Avenue, Fennville, Michigan, since June 1976. While residing at 5556 124th Avenue, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 5556 124th Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs Joe Ramirez and Rose Ramirez have had to replace their hot water heater, bathroom faucets, kitchen faucet, toilet, and shower system that became irreparably discolored, corroded or otherwise destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

31.     Plaintiff Barbara Ries has owned and resided at the property located at 2411 Retreat Road, Fennville, Michigan, since 1991.  While residing at 2411 Retreat Road, this Plaintiff relied and continues to rely on a private well to supply drinking water.  Upon information and belief, during the period that this Plaintiff has owned and resided at 2411 Retreat Road, that property was contaminated with pollution that emanated from the Birds Eye Facility. Plaintiff Barbara Ries has had to replace her hot water heater and water softener that became irreparably discolored, corroded or otherwise destroyed from the contamination.   The

17

contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  This Plaintiff has been and continues to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter her property.

32.    Plaintiff Janet Rybak has owned the property located at 5383 123rd Avenue, Fennville, Michigan, (also known as 2303 54th Street, Fennville, Michigan), since January 2000; during this period of time she has resided at 5383 123rd Avenue.  This Plaintiff relied and continues to rely on a private well to supply drinking water.  Upon information and belief, during the period that this Plaintiff has owned and resided at 5383 123rd Avenue, the property was contaminated with pollution that emanated from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  This Plaintiff has been and continues to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter her property.

33.    Plaintiff Jesus Salazar has owned the property located at 2244 55th Street, Fennville, Michigan, since 2004.  Plaintiffs Jesus Salazar and Wendy Salazar, husband and wife, resided at 2244 55th Street from October 2004 until October 2005.  Plaintiff Jessica Salazar is the daughter of Jesus Salazar and Wendy Salazar and resided at the property from October 2004 until October 2005, and again from March 2009 until October 2009.  Plaintiff Jesus Salazar, Jr., is the son of Jesus Salazar and Wendy Salazar and resided at the property from October 2004 until October 2005.  While residing at 2244 54th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 2244 55th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs Jesus Salazar and Wendy Salazar have had to replace their hot water heater that became irreparably discolored, corroded or

34.     Plaintiffs Larry Saylor and Darcy Saylor, husband and wife, have owned and resided at the property located at 2293 55th Street, Fennville, Michigan, since March 1979. Plaintiff Heather Lynn Saylor is the daughter of Larry Saylor and Darcy Saylor and has resided at the property from 1980 until the present.  Plaintiff Larry Saylor suffers from gastrointestinal problems, nausea and vomiting.  Plaintiff Heather Lynn Saylor suffers from developmental issues.  While residing at 2293 55th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 2293 55th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs Larry Saylor and Darcy Saylor have had to replace their hot water heater, water softener, faucets, pipes, toilet, bathtub, and washing machine that became irreparably discolored, corroded or otherwise destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

35.     Plaintiff Brian Sessions has owned and resided at the property located at 5342 124th Avenue, Fennville, Michigan, since October 2006.  Plaintiff Brian Sessions has used this property as his primary residence as well as for his lawn care business.  Plaintiffs Lee Sessions and Margaret Sessions, husband and wife, who bring this claim for themselves, individually, and

by guardianship on behalf of Elijah Lee Sessions, a minor, are the parents of Brian Sessions and have resided at the property since August 2009.  Elijah Lee Sessions, a minor, is the grandson of Lee Sessions and Margaret Sessions and has resided at the property since August 2009.  Plaintiff Brian Sessions suffers from gastrointestinal problems.  Plaintiff Lee Sessions suffers from gastrointestinal problems and kidney dysfunction.  Plaintiff Margaret Sessions suffers from gastrointestinal problems.  While residing at 5342 124th Avenue, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 5342 124th Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiff Brian Sessions has had to replace his toilets, bathtub, faucets, and sinks that became irreparably discolored, corroded or otherwise destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter the property.

36.      Plaintiffs Danny Sharp and Schelia Sharp, husband and wife, have owned and resided at the property located at 5381 124th Ave, Fennville, Michigan, since January 1976. Plaintiff Schelia Sharp suffers from gastrointestinal problems, dizziness, difficulty walking, kidney dysfunction, nausea and vomiting.  While residing at 5381 124th Ave, these Plaintiffs relied and continue to rely on a private well to supply drinking water.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 5381 124th Ave, that property was contaminated with pollution that emanated from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged

herein. These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

37. Plaintiffs Royal Streicher and Tamula Streicher, husband and wife, who bring this claim for themselves, individually, and on behalf of Jennifer Streicher, a minor, have owned and resided at the property located at 2268 54th Street, Fennville, Michigan, since May 2000. Jennifer Streicher, a minor, is the daughter of Royal Streicher and Tamula Streicher and has resided at the property since May 2000. Melanie Streicher, who brings this claim for herself, individually, and on behalf of Cameron Streicher, a minor, is the daughter of Royal Streicher and Tamula Streicher and has resided at the property since May 2000. Cameron Streicher, a minor, is the son of Melanie Streicher and has resided at the property from the time of his birth in 2009. Plaintiff Royal Streicher suffers from dizziness and difficulty walking, gastrointestinal problems and kidney dysfunction. Plaintiff Tamula Streicher suffers from gastrointestinal problems, nausea and vomiting. While residing at 2268 54th Street, these Plaintiffs relied and continue to rely on a private well to supply drinking water. Upon information and belief, during the period that these Plaintiffs have owned and resided at 2268 54th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility. Plaintiffs utilize the property to sell produce locally; this use of the property is rendered infeasible due to Birds Eye's contamination of the groundwater. Plaintiffs Royal Streicher and Tamula Streicher have had to replace their hot water heater, water softener, pump, well, faucets, pressure tank, pipes, water filters, and valves on their washer that became irreparably discolored, corroded or otherwise destroyed from the contamination. The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein. These Plaintiffs have been and continue to be exposed to and

injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

38.     Plaintiffs Mitch Van Dyke and Vicki Van Dyke, husband and wife, have owned and resided at the property located at 2612 56th Street, Fennville, Michigan since December 1994.  Plaintiff Steven Murray is the brother of Vicki Van Dyke and has resided at the property since 2004.  Plaintiff Mitch Van Dyke suffers from dizziness and difficulty walking.  Plaintiff Steven Murray has resided at the property since 2006.  Upon information and belief, during the period that these Plaintiffs have owned and resided at 2612 56th Street, that property was contaminated with pollution that emanated from the Birds Eye Facility.  Plaintiffs Mitch Van Dyke and Vicki Van Dyke have had to replace their hot water heater, water softener, faucets, and toilets that became irreparably discolored, corroded or otherwise destroyed from the contamination.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

39.     Plaintiffs Kenneth Wieland and Debra Wieland, husband and wife, have owned and resided at the property located at 5438 124th Avenue, Fennville, Michigan, since 1983. Plaintiff Debra Wieland suffers from gastrointestinal problems.  While residing at 5438 124th Avenue, these plaintiffs relied and continue to rely on a private well to supply drinking water. Upon information and belief, during the period that these Plaintiffs have owned and resided at 5438 124th Avenue, that property was contaminated with pollution that emanated from the Birds Eye Facility.  The contamination is a direct and proximate result of Birds Eye's acts and omissions as alleged herein.  These Plaintiffs have been and continue to be exposed to and

injured by contaminated groundwater from Birds Eye that entered and continues to enter their property.

40.     In addition to their other injuries, some or all of the Plaintiffs have incurred expenses due to purchasing bottled water for drinking and cooking necessitated by Birds Eye's contamination of the groundwater.  Some or all of the Plaintiffs have incurred expenses due to expending money to replace or repair plumbing fixtures and other personal property damaged or destroyed by Birds Eye's contamination of the groundwater including, but not limited to, well components, hot water heaters, water softeners, washing machines and bathroom fixtures.

41.     Some or all of the Plaintiffs have reported significant illnesses in the dogs, cats and other animals in their care, including, without limitations, tumors, cancers and premature death.  These conditions may have been caused or worsened by the animals' ingestion of water contaminated by Birds Eye's operations at the Birds Eye Facility.

42.      Some or all of the Plaintiffs have reported that the water from their private wells has a strong, foul odor when they turn on their faucets, taps, showers, and other water fixtures and plumbing components.  This odor is due to the contamination of their wells by Birds Eye's operations at the Birds Eye Facility.

### IV. GENERAL ALLEGATIONS

**The Birds Eye Facility and its Land Application of Industrial Waste**

43.     Land application of industrial food processing wastewater is the discharging of such wastewater—usually containing salts, sugars and other chemical compounds—directly onto fields, often located nearby or at the food processing facility that generated the wastewater.

44.     Upon information and belief, Birds Eye purchased the Facility more than 25 years ago for the purpose of fruit and vegetable processing and packaging.  Such operations, which had

been performed at the Facility prior to Birds Eye's ownership for most of the twentieth century and continue to this day, early on included the processing and packaging of asparagus, beans, carrots, cherries, plums, crabapples, apple rings, apple sauce and tomato juice, and more recently focuses on the manufacture of fruit fillings, sauces and glazes made from cherries, blueberries and apples.

45.    Upon information and belief, Birds Eye's process wastewater is comprised of fruit and vegetable processing byproducts, industrial cleaning chemicals, clean up water, storm water discharge, and other industrial processing wastes from the Facility.

46.    Upon information and belief, beginning in or before 1982, Birds Eye land applied its process wastewater via spray irrigation onto open spray fields east of the Birds Eye Facility and south of M-89 in Fennville, Michigan.

47.    Upon information and belief, Birds Eye continues to land apply process wastewater via spray irrigation at the Birds Eye Facility.

48.    Pursuant to permits issued by the Michigan Department of Natural Resources (the "MDNRE") under Part 31 of Michigan's Natural Resources and Environmental Protection Act, 1994 PA 451, as amended (together with its predecessor statutes, "NREPA"), over the years of Birds Eye's operations at the Facility, Birds Eye was permitted to land apply up to 1,700,000 gallons/day (260,000,000 gallons/year) of process wastewater via spray irrigation to portions of the Birds Eye Facility.  These permits had various restrictions, including without limitation that such disposal would not "injuriously affect public health or welfare, or commercial, industrial, domestic, agricultural, recreational, or other uses of the groundwater or surface waters of the state, nor cause nuisance conditions such as, but not limited to odors" or "result[] in pooling or runoff of the wastewater past property boundaries or to adjoining water courses" or " . . . create a

49.     Upon information and belief, over the decades that Birds Eye used land disposal as a method to manage its wastes at the Birds Eye Facility, it disposed of hundreds of millions of gallons of process wastewater into the Fennville groundwater and the Michigan environment.

50.     Upon information and belief, despite the express requirements of Birds Eye's wastewater discharge permit, Birds Eye's wastewater discharges exceeded permit limits and resulted in pooling of wastewater.

51.     Upon information and belief, despite Birds Eye's permit requiring that land application not result in a threat to public health or create a nuisance condition, and despite Birds Eye's obligation to monitor the groundwater to ensure full compliance with the permit and other Michigan laws, Birds Eye did not begin to adequately assess the quality of the groundwater beneath the land application fields and downgradient from the land application fields until 2005, after being required to do so by MDNRE and more than 20 years after Birds Eye began land applying its wastewater at the Facility.

**Birds Eye's Contamination of Fennville Groundwater**

52.     Upon information and belief, Birds Eye continues to spray process wastewater— containing salts, sugars, industrial cleaning chemicals, storm water and other chemical compounds--onto open fields at the Facility, and these chemicals pass though the soil and drain into the Fennville, Michigan groundwater.

53.     As the process wastewater percolates down through the Fennville soil, microorganisms consuming the chemical nutrients in the wastewater deplete the available oxygen underground, creating oxygen-deprived or anaerobic conditions in the soil and groundwater.

54.     The anaerobic conditions in the soil and groundwater cause naturally occurring heavy metals in the soil, such as manganese, iron and arsenic, to leach into the groundwater. This results in significantly higher levels higher of these metals in the Fennville groundwater than would have existed in the absence of the anaerobic condition created by Birds Eye.

55.     Once present in the oxygen-deprived groundwater, these metals flowed and continue to flow with the groundwater from the Birds Eye Facility to Plaintiffs' properties, where they have contaminated and continue to contaminate Plaintiffs' properties including, but not limited to, Plaintiffs' drinking water wells.

56.     Heavy metal contamination in oxygen-deprived groundwater is very persistent and, without active remediation, causes injury to property and can cause injury to human health for decades.

57.     The elevated levels of manganese, iron and arsenic that leach into the groundwater as a consequence of these chemical reactions, initiated by the operations at the Birds Eye Facility, has resulted in groundwater migrating from the Birds Eye Facility and onto Plaintiffs' properties that exceeds applicable aesthetic and health-based standards for these contaminants under Michigan and federal law.

58.     Due to the sandy nature of the Fennville Michigan soils, the plume of contamination emanating from the Birds Eye Facility tends to increase in concentration with depth and distance from the Facility, increasing the threat to deep aquifers from the pollution.

59.     During Birds Eye's operation of the Facility, numerous notices were issued by State authorities to Birds Eye indicating violations of Michigan water protection laws due to permit violations, including, but not limited to, Parts 22 and 201 of NREPA.

60.     In 2004, MDNRE issued a notice of violation to Birds Eye after groundwater monitoring results again indicated the presence of elevated concentrations of certain metals. Based on the presence of the contamination, MDNRE requested that Birds Eye begin a comprehensive remedial investigation of the groundwater under and downgradient from the Facility spray fields in accordance with NREPA Part 201.

61.     While the requested remedial investigation was initiated in 2005, the remedial investigation work plan was not approved until January 2006.  The remedial investigation work plan has been supplemented since January 2006.  The remedial investigation is ongoing.

62.     In response to the information Bird Eye has developed as part of the remedial investigation, MDNRE required that Birds Eye provide bottled drinking water to some Fennville residents, including to some Plaintiffs.

63.     The testing results gathered as part of the ongoing remedial investigation of the impacts of Birds Eye's operations at the Facility indicate that the groundwater beneath the spray fields and downgradient from the Birds Eye Facility continue to be contaminated with concentrations of heavy metals in violation of NREPA.

64.     While the plume of elevated metal concentrations in the Fennville groundwater is not yet fully delineated, current information indicates that the plume of contamination extends at a minimum from the Birds Eye Facility 1.8 miles east, approximately 0.25 mile north and approximately 0.75 mile south.  Overall, the area of the known plume of contamination is at least 2 square miles.

**Impacts of Birds Eye's Contamination of Fennville Groundwater**

65.     Upon information and belief, groundwater flows generally in an easterly direction from the Birds Eye Facility towards residential areas of Fennville, Michigan.

66.     Plaintiffs generally reside and/or work, or resided and/or worked, in the area due east and northeast of the Birds Eye Facility, in an area bordered by the Facility to the west and 53rd Street to the east.

67.     Plaintiffs residing in the City of Fennville get their potable drinking water from public water wells located downgradient from the Birds Eye Facility.  Plaintiffs residing in Clyde or Manlius Townships, but outside of the City of Fennville, until recently got their potable drinking water from private wells located on their properties and now either continue to do so or have resorted to drinking bottled water.

68.     As a result of contamination from the Birds Eye Facility, Plaintiffs' groundwater is and will continue to be unsafe for use or consumption and, without active remediation, will continue to be contaminated for decades to come.

69.     Monitoring wells near the Birds Eye spray fields show heavy metals at levels above current federal limits and limits established by the State of Michigan through Part 31 of the NREPA.

70.     Because of Birds Eye's failure to prevent or contain subsurface chemical reactions at the Birds Eye Facility, groundwater which contains elevated levels of iron, manganese and arsenic has migrated from the Facility and has contaminated private drinking water wells on Plaintiffs' properties, creating a risk to human health, causing physical damage to Plaintiffs' residential properties and businesses, interfering with the use and enjoyment of Plaintiffs' properties and/or reducing the value of Plaintiffs' properties and/or businesses.

71.     Prolonged exposure to the pollutants with which Birds Eye contaminated and continues to contaminate Plaintiffs' groundwater is injurious to human health and the environment and increases Plaintiffs' risk of contracting cancer and other life-threatening and life-altering illnesses.

72.     Exposure to manganese in water can cause, amongst other things, damage to the nervous system, and water containing even low levels of manganese may be discolored, resulting in a brownish-black stain, and have an offensive taste and odor.

73.     Exposure to high levels of iron can cause, amongst other things, damage to internal organs such as the liver and pancreas.  Water with high iron content can leave bathroom and kitchen fixtures, laundry and tableware stained reddish-brown or orange.  When mixed with coffee or tea, iron in water can produce a dark black color and unappealing taste.  Excess iron can cause the growth of bacteria, which leave a reddish brown or yellow slime that can clog plumbing and cause an offensive odor.

74.     Arsenic is a known human carcinogen and exposure to lower levels can cause, amongst other things, nausea and vomiting, decreasing production of red and white blood cells, abnormal heart rhythm and damage to blood vessels.  It is not possible to detect elevated arsenic levels in water without testing.

75.     The presence of elevated levels of manganese, iron and arsenic in groundwater is harmful to Plaintiffs' properties and Plaintiffs' interest in their properties.  The presence of these contaminants on Plaintiffs' properties has resulted in a reduction of the properties' values.

76.     Plaintiffs' personal property and appliances have been damaged and continue to be damaged or destroyed by the metals in the groundwater—including Plaintiffs' bathtubs, washing machines and dryers, faucets and other plumbing fixtures, hot water heaters, water

softeners, boilers and/or other water treatment appliances—that have become irreparably discolored, corroded or otherwise destroyed from the contamination.

77.     Upon information and belief, the process by which land application of process wastewater results in oxygen-deprived aquifer conditions and groundwater contamination has long been understood.  Birds Eye knew or should have known that its operations were or could be causing groundwater contamination long before—decades before—it began to inform Fennville residents about the groundwater conditions.

78.     Upon information and belief, Birds Eye has withheld information and failed to give Plaintiffs notice of the contamination emanating from the Birds Eye Facility from and after the time Birds Eye knew or should have known that such contamination existed, as required by administrative rules R 299.5522 and R 299.5107(1) under Part 201 of NREPA.  Upon information and belief, despite Birds Eye knowing of the contaminated groundwater emanating from the Birds Eye Facility, it did not begin to transmit this information to residents on Fennville until May 2008, when certain residents were first notified that sampling results indicated that their groundwater was contaminated.

79.     Plaintiffs and their properties were exposed and continued to be exposed to contaminated groundwater without warning by Birds Eye of the risks of such contamination for many years.

80.     Birds Eye's failure to cease land application of wastewater or to take remedial or preventive measures with respect to the contaminated groundwater flowing from the Birds Eye Facility for more than 20 years resulted in and continues to result in contamination of Plaintiffs' properties.  Upon information and belief, Birds Eye has not taken any steps to actively remediate the groundwater contamination migrating from the Facility to Plaintiffs' properties.

81.     Birds Eye continues to spray wastewater onto land application sites surrounding the Birds Eye Facility despite its knowledge that this action causes groundwater contamination.

82.     As a direct and proximate result of the actions of Birds Eye described above, Plaintiffs have sustained damages, including, but not limited to, the following:

    a.    Costs of obtaining alternate water supply and other response activity costs;

    b.    Contamination of their property;

    c.    Loss of use and enjoyment of their property;

    d.    Diminution in market value of their property;

    e.    Physical illness and/or increased risks to their health;

    f.    Emotional distress;

    g.    Stigma associated with contamination of their property;

    h.    Potential cleanup costs;

    i.    Expenses incurred resulting from contamination of their property;

    j.    Medical expenses; and

    k.    Such other damages as may become apparent during the course of discovery in this matter.

## V.    CAUSES OF ACTION

### Count I

### Negligence and/or Gross Negligence

83.    Plaintiffs reallege and restate the allegations in paragraphs 1 through 82 above as if fully set forth herein.

84.    Birds Eye owed and continues to owe to Plaintiffs, its neighbors, a duty to exercise ordinary care and diligence so that the operations of the Birds Eye Facility do not contaminate Plaintiffs' properties and/or otherwise injure Plaintiffs.  The duties Birds Eye owed and continues to owe to Plaintiffs include, but are not limited to, the following:

    a.  To dispose of its industrial process wastewater in a manner that protects Plaintiffs and the environment from unreasonable harm;

    b.  To prevent the migration of pollutants dangerous to human health and the environment from the Birds Eye Facility into the Fennville, Michigan, groundwater and onto Plaintiffs' properties;

    c.  To inform Plaintiffs in a prudent and timely manner of groundwater contamination;

    d.  To protect Plaintiffs from being harmed by exposure, through ingestion and/or otherwise, to groundwater contaminated due to Birds Eye's and any former owner's operations at the Facility, including by providing alternative clean drinking water until Birds Eye can take the steps necessary to ensure that Plaintiffs have permanent access to clean and potable drinking water; and

    e.  To conduct appropriate response activities to remediate the contaminant plume migrating from the Facility onto Plaintiffs' properties;  and

    f.  Such other duties as may become apparent during the course of discovery in this matter.

85.    Birds Eye knowingly breached its duty to exercise ordinary care and diligence by failing to dispose of its industrial wastewater in a safe manner that did not result in the

contamination of Plaintiffs' properties.  Birds Eye's breaches of its duty of ordinary care and diligence include, but are not limited to, the following:

    a.  Failing to dispose of its industrial wastewater in a safe manner that did not harm Plaintiffs;

    b.  Preventing and continuing to prevent the migration of hazardous chemicals from the Birds Eye Facility onto Plaintiffs' properties;

    c.  Failing and continuing to fail to inform Plaintiffs of the risks posed by the contaminated groundwater;

    d.  Failing and continuing to fail to protect Plaintiffs from the harm of exposure to the contaminated groundwater;

    e.  Failing and continuing to fail to remediate the contaminated groundwater; and

    f.  Such other breaches as may become apparent during the course of discovery in this matter.

86.    The conduct of Birds Eye in knowingly allowing such conditions to exist, which caused hazardous chemicals to physically invade Plaintiffs' properties, constitutes gross negligence as it demonstrates a substantial lack of concern for whether injury resulted to Plaintiffs.

87.    Birds Eye's gross negligence entitles Plaintiffs to an award for exemplary damages.

88.    As a direct and proximate result of Birds Eye's negligence and/or gross negligence, Plaintiffs have sustained the damages more fully described above.

89.    WHEREFORE, Plaintiffs respectfully request that judgment be entered against Birds Eye in whatever amount Plaintiffs are deemed to be entitled, together with interest, costs, attorney fees and such other relief as the Court deems just under the circumstances.

## Count II

### Negligence Per Se

90.     Plaintiffs reallege paragraphs 1 through 89 as if fully set forth herein.

91.     Birds Eye owed and continues to owe a duty to Plaintiffs to dispose of its industrial wastewater in accordance with applicable laws and regulations.

92.     At all times relevant hereto, Birds Eye disposed of its industrial wastewater from the Birds Eye Facility in direct violation of laws and regulations, including without limitation those set forth pursuant to NREPA, as more fully described above.

93.     Plaintiffs are within the class of persons sought to be protected by NREPA, and they suffered and continue to suffer the type of injury against which the statute was designed to protect.

94.     Birds Eye's violation of applicable laws and regulations in its disposal of its industrial wastewater constitutes negligence per se.

95.     As a direct and proximate result of Birds Eye's negligence per se in failing to properly dispose of its industrial wastewater, properties were, and continue to be, physically invaded and contaminated by toxic substances emanating from the Facility and Plaintiffs have been and continue to be physically injured due to their exposure to these pollutants.

96.     In owning and operating the Birds Eye Facility, Birds Eye has a duty to abide by applicable laws and regulations so that hazardous chemicals from its facility do not contaminate Plaintiffs' properties or cause Plaintiffs physical harm.

97.     Birds Eye knowingly breached its duty to abide by applicable laws and regulations in disposing of its industrial wastewater and knew, or should have known, that such

actions would cause Plaintiffs' properties to be contaminated by hazardous chemicals emanating from the Facility and that Plaintiffs would be injured due to their exposure to these pollutants.

98.     Birds Eye's willful violation of applicable laws and regulations regarding its disposal of industrial wastewater entitles Plaintiffs to an award of exemplary damages.

99.     As a direct and proximate result of Birds Eye's negligence per se, Plaintiffs have sustained the damages more fully described above.

100.     WHEREFORE, Plaintiffs respectfully request that judgment be entered against Birds Eye in whatever amount Plaintiffs are deemed to be entitled, together with interest, costs, attorney fees and such other relief as the Court deems just under the circumstances.

## Count III

### Nuisance

101.     Plaintiffs reallege paragraphs 1 through 100 as if fully set forth herein.

102.     Birds Eye's discharge of wastewater onto or into the ground at the Birds Eye Facility resulting in the migration of hazardous chemicals to and contamination of Plaintiffs' properties, unreasonably and substantially interfered with and invaded, and continues to interfere with and invade, Plaintiffs' property rights, including without limitation their private use and enjoyment of their properties, and therefore constitutes a private nuisance.

103.     The continuing migration and resulting contamination of Plaintiffs' properties by hazardous chemicals from the Birds Eye Facility unreasonably and substantially interferes with and is an invasion of Plaintiffs' property rights, including without limitation their private use and enjoyment of their properties, and therefore will constitute a continuing nuisances so long as such interference and invasion does not cease.

104.    Plaintiffs have never consented to having Birds Eye cause hazardous chemicals to physically invade and interfere with their properties.

105.    Birds Eye knew or should have known at all relevant times that the hazardous chemicals that it caused to enter into the groundwater would migrate offsite and invade and interfere with Plaintiffs' private property rights.

106.    Although it can be abated, Birds Eye has continued to maintain and has failed to abate the nuisance which it created.

107.    As a direct and proximate result of Birds Eye's nuisance and its failure to abate the nuisance, Plaintiffs have suffered the damages more fully described above.

108.    WHEREFORE, Plaintiffs respectfully request that judgment be entered against Birds Eye in whatever amount Plaintiffs are deemed to be entitled, together with interest, costs, attorney fees and such other relief as the Court deems just under the circumstances.

## Count IV

### Trespass

109.    Plaintiffs reallege paragraphs 1 through 108 as if fully set forth herein.

110.    Birds Eye's deposition of industrial wastewater from the Birds Eye Facility into the environment over the course of many years, a process that Birds Eye fully controlled, caused and continues to cause hazardous chemicals to migrate onto and physically invade and intrude upon Plaintiffs' properties, which Plaintiffs own and/or possess, or owned and/or possessed during Birds Eye's contamination thereof, constituting a trespass to Plaintiffs' properties.

111.    The hazardous chemicals which have entered onto and have physically invaded Plaintiffs' properties and will continue to enter onto and physically invade Plaintiffs' properties,

have interfered with Plaintiffs' interests in the exclusive possession of their properties and constitute a continuing trespass upon Plaintiffs' properties.

112.    Plaintiffs have never consented to having Birds Eye cause hazardous chemicals to physically invade and interfere with their properties.

113.    Birds Eye knew or should have known at all relevant times that the hazardous chemicals that it caused to enter into the groundwater would migrate offsite and invade and interfere with Plaintiffs' private property rights.

114.    Although it can be abated, Birds Eye has continued to maintain and has failed to abate the trespass which it created.

115.    Birds Eye's actions, which resulted in the trespass onto Plaintiffs' properties, were and continue to be intentional and willful, entitling Plaintiffs to exemplary damages.

116.    As a direct and proximate result of Birds Eye's trespass onto Plaintiffs' properties, Plaintiffs have sustained the damages as more fully described above.

117.    WHEREFORE, Plaintiffs respectfully request that judgment be entered against Birds Eye in whatever amount Plaintiffs are deemed to be entitled, together with interest, costs, attorney fees and such other relief as the Court deems just under the circumstances.

## Count V

### Strict Liability Based on Abnormally Dangerous Activity

118.    Plaintiffs reallege paragraphs 1 through 117 as if fully set forth herein.

119.    Birds Eye's disposal of industrial wastewater at the Birds Eye Facility constituted abnormally dangerous conditions and/or activities.

120.    Birds Eye used chemical food additives and industrial cleaning chemicals as part of its commercial operations, and created industrial wastes in quantities that posed a high risk of

serious harm to residents in nearby communities if released into the environment, particularly if released into the groundwater.  The risks posed by those wastewaters being released into the groundwater could not be eliminated even by the exercise of reasonable care and prudence in handling them.  The generation of such quantities of industrial wastewaters was not a matter of common usage in the relevant communities, and the activity was not appropriate into shallow groundwater used as a drinking water source that was flowing directly towards a residential neighborhood.

121.    As a result of Birds Eye's actions, Plaintiffs' properties have been contaminated.

122.    By allowing, permitting and failing to stop the migration of contaminated groundwater from the Birds Eye Facility to Plaintiffs' properties, Birds Eye is strictly liable for the contamination of Plaintiffs' properties.

123.    Birds Eye knew or should have known that by allowing contaminated groundwater to migrate from the Birds Eye Facility onto Plaintiffs' properties such contamination would cause, and has caused, injuries to health and serious and substantial property damage.

124.    As a direct and proximate result of Birds Eye's abnormally dangerous activities, Plaintiffs have sustained the damages more fully described above.

125.    WHEREFORE, Plaintiffs respectfully request that judgment be entered against Birds Eye in whatever amount Plaintiffs are deemed to be entitled, together with interest, costs, attorney fees and such other relief as the Court deems just under the circumstances.

## Count VI

### Part 201 Cost Recovery

126.    Plaintiffs reallege paragraphs 1 through 125 as if fully set forth herein.

127.    The Birds Eye site is a "Facility" as that term is defined by MCL 324.20101(1)(o) due to releases of hazardous chemicals at the site while owned and/or operated by Birds Eye.

128.    Pursuant to directives from MDNRE, Birds Eye has performed a limited remedial investigation with respect to the hazardous chemicals that were released at the Birds Eye Facility.

129.    The hazardous chemicals released by Birds Eye from the Birds Eye Facility have migrated to Plaintiffs' properties and contaminated the soil and groundwater of Plaintiffs' properties and have prevented Plaintiffs from using their drinking water.

130.    Plaintiffs are not liable under Part 201 of NREPA with respect to the hazardous chemicals released by Birds Eye because the hazardous chemicals have migrated to Plaintiffs' properties.  Mich. Comp. Laws § 324.20126(4)(c).

131.    Birds Eye is liable under Part 201 of NREPA with respect to the releases of hazardous chemicals in accordance with Mich. Comp. Laws § 324.20126(1)(a)-(b).

132.    Plaintiffs have incurred and will continue to incur response activity costs within the meaning of Part 201 of NREPA with respect to the hazardous chemicals released from the Birds Eye site which have migrated to Plaintiffs' properties.

133.    Plaintiffs are entitled to recover from Birds Eye the response activity costs which they have incurred and which they will incur in the future pursuant to Mich. Comp. Laws § 324.20126a.

134.    WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment against Birds Eye in the amount of Plaintiffs' past and future response activity costs, together with interest, costs, attorney fees and such other relief as the Court deems just under the circumstances.

## Count VII

### Michigan Environmental Protection Act

135.    Plaintiffs reallege paragraphs 1 through 134 as if fully set forth herein.

136.    Birds Eye owned and operated the Birds Eye Facility and by allowing the release of hazardous chemicals at the site and the migration of hazardous chemicals to Plaintiffs' properties and by failing to take adequate remedial action with respect to the hazardous chemicals, Birds Eye has polluted, impaired or destroyed the groundwater and surface water and as such, its actions constitute a violation of the Michigan Environmental Protection Act, Mich. Comp. Laws § 324.1701, et seq. ("MEPA").

137.    Birds Eye does not have a permit or other authorization to contaminate surface and groundwater with hazardous chemicals to the detriment of Plaintiffs.  Pursuant to Part 201 of NREPA, Birds Eye has an obligation to perform adequate remedial actions with respect to hazardous chemicals which include, but are not limited to, determining the nature and extent of the release, preventing the continuing release from the source and perform response activities necessary to meet appropriate cleanup criteria.

138.    Birds Eye has failed to fulfill its remedial obligations pursuant to Part 201 of NREPA by, inter alia, failing to stop the continuous migration of hazardous chemicals to Plaintiffs' properties and by failing to remove hazardous chemicals from Plaintiffs' properties, which has resulted in damages to Plaintiffs' properties as more fully described above.

139.    WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment against Birds Eye which provides as follows:

a.      Require Birds Eye to undertake necessary response activities to determine the extent of the hazardous chemical plume in the vicinity of Plaintiffs' properties, prevent the further migration of hazardous chemicals to Plaintiffs' properties and take all necessary action to remove hazardous chemicals from Plaintiffs' properties;

b.      Declare that Birds Eye has failed to comply with applicable state and federal cleanup criteria and establish Birds Eye's legal responsibility with respect to the hazardous chemicals on and in the vicinity of Plaintiffs' properties; and

c.      Award Plaintiffs their costs and attorney fees incurred in bringing this action.

Respectfully Submitted,

WEITZ & LUXENBERG, P.C.
700 Broadway
New York, New York 10003
(212) 558-5500

By:  /s/ Bernard A. Weintraub

William J. Stapleton (P38339)
Bruce T. Wallace (P24148)
Co-Counsel for Plaintiffs
HOOPER, HATHAWAY, P.C.
126 South Main Street
Ann Arbor, MI 48104
(734) 662-4426

Dated: June 30, 2010

JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable herein.


WEITZ & LUXENBERG, P.C.
700 Broadway
New York, New York 10003
(212) 558-5500

By:  /s/ Bernard A. Weintraub

William J. Stapleton (P38339)
Bruce T. Wallace (P24148)
Co-Counsel for Plaintiffs
HOOPER, HATHAWAY, P.C.
126 South Main Street
Ann Arbor, MI 48104
(734) 662-4426


Dated: June 30, 2010